**Johnny FASSI, Soly Fassi, Mimi Fassi, Zerga, S.R.L. and ALN, S.R.L., Plaintiffs,**

v.

**LJN TOYS, LTD. and MCA, Inc., Defendants.**

**No. 90 Civ. 2196 (MGC).**

United States District Court, S.D. New York.

Dec. 19, 1990.

Kronish, Lieb, Weiner & Hellman, New York City by Ivan Kline, for plaintiffs.

Wachtell, Lipton, Rosen & Katz New York City by Scott A. Edelman, Michael W. Schwartz, for defendants.

CEDARBAUM, District Judge.

This is an action for breach of two contracts between Johnny Fassi, LJN Italy and LJN Toys, Ltd. ("LJN Toys"). Defendants have moved to dismiss the entire complaint on the ground of *forum non conveniens* or, in the alternative, to stay this action pending the resolution of related litigation in Italy.

## I. *Background*

Plaintiffs Johnny Fassi, Soly Fassi, and Mimi Fassi are brothers and Italian citizens. Plaintiffs Zerga, s.r.l. ("Zerga") and ALN, s.r.l. ("ALN") are Italian corporations owned by the Fassi family. Defendant LJN Toys is a New York corporation with its principal place of business in New Jersey. LJN Toys was the 80% owner of LJN Italy during the period relevant to this action. Defendant MCA, Inc. ("MCA") was the parent corporation of LJN Toys at that time. MCA is a Delaware corporation with its principal place of business in California.

Until 1987, Johnny Fassi and other members of the Fassi family owned the Italian company AL–ES, s.r.l. ("AL–ES"), which was in the business of selling toys. In March of 1987, the Fassis agreed to sell AL–ES to LJN Italy, the Italian subsidiary of defendant LJN Toys.

The sale agreement also provided for various transactions between other Fassi family companies and subsidiaries of LJN Toys. Specifically, Zerga subscribed to 20% of the shares of LJN Italy, and ALN subscribed to 20% of the shares of Superest, a company owned by LJN Toys' Hong Kong subsidiary.

From March 1987 through most of 1988, Johnny Fassi was employed as general manager of AL–ES and of LJN Italy. Disputes arose between Fassi and LJN Toys, however, and Fassi's employment as manager ended in December of 1988.

### A. *The 1989 Agreements*

At the beginning of 1989, Johnny Fassi and LJN Italy attempted to resolve their disputes. This attempt yielded two contracts, both dated February 1, 1989. One, the "Employment Agreement," set out the terms on which Johnny Fassi would return as manager of LJN Italy and AL–ES. Section 8 of the Employment Agreement stated that it was to be governed by Italian law and that "the Courts of Italy shall be competent" for disputes arising under it.

The other agreement, the "Umbrella Agreement," addressed various other issues between the Fassi family and its companies, and LJN Italy. The Umbrella Agreement provided, among other things, that LJN Italy would repay outstanding loans made by the Fassis and Zerga to LJN Italy and AL–ES; that LJN Toys would buy out Zerga's 20% interest in LJN Italy; and that LJN Toys, through its Hong Kong subsidiary, would close and liquidate Superest as soon as practicable and repay ALN's 20% investment in it. The Umbrella Agreement also provided that Zerga would receive 20% of any American insurance proceeds recovered by LJN Toys or MCA for a 1988 warehouse fire in Italy. Section 21 of the Umbrella Agreement, the basis for four of plaintiff's claims against LJN Toys, provides as follows:

> LJN Toys Ltd, undertakes to maintain their controlling interest in and not to liquidate nor to cease operations o[f] LJN Italy and/or AL–ES as long as their obligations toward Johnny, Soly and Mimi Fassi under this Agreement and the Employment Agreement are not fully performed.

The signatories to the two agreements are Johnny Fassi, LJN Italy and LJN Toys.

The parties differ as to the events surrounding the operation of AL–ES and LJN Italy during 1989, but they do not dispute that AL–ES was placed in liquidation on November 28, 1989 and that LJN Italy was placed in liquidation on December 20, 1989.

### B. *The Italian Litigation*

In late 1989, the Fassis sued AL–ES in the Italian Court of Monza for repayment of outstanding loans, and that court preliminarily attached AL–ES's assets in the amount of the debt. The Fassi brothers also sued LJN Italy and AL–ES in the Labor Court of Monza. That action sought

salary and benefits allegedly due the Fassi brothers under the Employment Agreement. LJN Toys is not a defendant in either of those Italian actions.

Subsequently, AL–ES filed for bankruptcy in the Bankruptcy Court of Milan. Because AL–ES is now in bankruptcy, all claims against it, including the Fassis' claim for repayment of loans, must be brought in the Milan Bankruptcy Court. The Fassis' action in the Labor Court for salary and benefits, including the claim against LJN Italy, has been stayed pending the outcome of the AL–ES bankruptcy proceedings.

### C. *This Action*

Plaintiffs brought this action on March 30, 1990, against LJN Toys and MCA. MCA has since sold LJN Toys to Acclaim Entertainment, Inc. Before doing so, however, through its subsidiary MCA Toys Holdings, Inc., MCA bought LJN Toys' 80% interest in LJN Italy. Seven claims are asserted in this complaint, six against LJN Toys for breach of contract and one against LJN Toys and MCA for a declaratory judgment.

The first claim alleges that LJN Toys breached both the Employment Agreement and the Umbrella Agreement by failing to pay Johnny Fassi's salary and by liquidating LJN Italy and AL–ES before they had done so. The second claim parallels the first with respect to payment of benefits rather than salary.[1]

Claims three and four of the complaint each allege that the Umbrella Agreement was breached when LJN Toys liquidated LJN Italy and AL–ES before performance of a specified obligation under the Umbrella Agreement. Specifically, the third claim alleges that the Fassis' loans to AL–ES had not been repaid and the fourth claim alleges that the loan by Zerga to LJN Italy had not been repaid. The fifth claim alleges that LJN Toys breached section 15 of the Umbrella Agreement by failing to buy out

Zerga's 20% interest in LJN Italy. The sixth claim alleges that LJN Toys breached Section 10 of the Umbrella Agreement by failing to cause its Hong Kong subsidiary to liquidate Superest and pay ALN for its 20% investment. The seventh claim seeks a declaratory judgment that pursuant to Section 19 of the Umbrella Agreement, Zerga is entitled to 20% of any American insurance proceeds recovered by LJN Toys and MCA for the 1988 warehouse fire.

### D. *Defendants' Motion to Dismiss*

Defendants have moved to dismiss on several grounds. Defendants argue that this action should be dismissed on the ground of *forum non conveniens;* that a forum selection clause in the Employment Agreement dictates dismissal of claims one and two; that claims one through five should be dismissed for failure to join necessary parties; and that claims six and seven should be dismissed for failure to state a claim. Alternatively, defendants ask this court to stay the action pending resolution of the actions against AL–ES and LJN Italy now pending in Italian courts. For the reasons discussed below, I find that the private and public interest factors governing *forum non conveniens* as described in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), require dismissal of this action. Therefore, I do not reach defendants' other arguments for dismissal.

### II. *Discussion*

■ A prerequisite to dismissal on the ground of *forum non conveniens* is the existence of an alternative forum. *See Gulf Oil,* 330 U.S. at 506–07, 67 S.Ct. at 842. In this case, another forum does exist: Italy. Defendants have represented that they will waive the defenses of lack of personal jurisdiction and statute of limitations if these claims are brought in Italy. In addition, defendants have represented

---

1. The second claim calls LJN's liquidation of the Italian subsidiaries a breach of the Employment Agreement rather than of the Umbrella Agreement, but the context shows that the Umbrella Agreement is meant and the reference to the Employment Agreement was inadvertent. Johnny Fassi confirms this in his affidavit.

that they will make their employees available in Italy as witnesses for trial.

■ The factors to be considered in deciding a motion to dismiss on the ground of *forum non conveniens* were set out by the Supreme Court in *Gulf Oil.* Considerations in the private interest of the parties include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843. Public interest factors include the local interest in having localized controversies decided at home and the difficulty of applying foreign law. *See id.* at 508–09, 67 S.Ct. at 843.

■ A plaintiff's choice of forum is generally entitled to great weight. But when the plaintiffs are foreign, their choice of an American forum is entitled to less deference. *See Piper Aircraft v. Reyno,* 454 U.S. 235, 255–256, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981). In this case, all of the plaintiffs are Italian. The plaintiff corporations do no business in the United States and have no offices here.

### A. Ease of Access to Relevant Sources of Proof

The location of the relevant documents in this case favors dismissal. Most of the relevant evidence in this case is located abroad. Four of plaintiffs' claims allege liquidation of defendants' Italian subsidiaries before they carried out their contractual obligations to plaintiffs. The fifth claim alleges failure to buy out Zerga's interest in one of those subsidiaries. The books and records of those subsidiaries are located in Italy and are in Italian.

The evidence on claim six includes the records of LJN Toys' Hong Kong subsidiary Superest. Some of those records are located in Hong Kong, and some have been sent to MCA in California. Neither of those locations supports New York as a more convenient forum than Italy for this litigation.

The documents relevant to the claim for a declaratory judgment that the Umbrella Agreement entitles Zerga to share in defendants' American insurance proceeds for the Italian warehouse fire do not support New York as a forum. Although evidence of the existence of proceeds might be located in the United States, such evidence is not needed to decide Zerga's claim of entitlement under the Umbrella Agreement.

### B. Attendance of Witnesses

The location of the witnesses also supports Italy as a more appropriate forum for this action. The witnesses include the plaintiffs and those employees of the defendants who are familiar with the contracts sued upon and the operations of the Italian subsidiaries. All of the individual plaintiffs reside in Italy. The employees of the corporate plaintiffs are in Italy as well. So are the former employees of the liquidated subsidiaries, AL–ES and LJN Italy, whose testimony could not be compelled in an action in New York.

Defendants have agreed to make their employees available as witnesses for trial in Italy. In addition, the two employees of defendants with the greatest knowledge of the facts, Janice Melhorn and Victor Temkin, reside in California and would not be subject to compulsory process for trial in this court or in Italy. In fact, their depositions have already been taken.

Plaintiffs argue that because they speak English and the American witnesses do not speak Italian, trial in Italy would require burdensome and expensive translation. This argument is not compelling. The individual plaintiffs are all Italian and speak Italian. Employees of the corporate plaintiffs presumably speak Italian as well. The books and records of the corporate plaintiffs and the defendants' Italian subsidiaries are in Italian. Thus, only the testimony of defendants' American employees would require translation in an Italian trial. Given that this action concerns a dispute

over events that occurred mainly in Italy, a need to translate some testimony into Italian does not alter the conclusion that Italy is a more convenient forum than New York for this litigation. The key witnesses are either in Italy or available for trial in Italy.

### C. *Local Interest in The Controversy*

The only connection this litigation has with New York is that defendant LJN Toys is a New York corporation. Plaintiffs point out that this action is against LJN Toys, not its Italian subsidiaries, for breach of LJN Toys' independent duties. Plaintiffs contend that LJN Toys negotiated, executed and breached the agreements from New York. Nonetheless, this action is essentially a dispute about events in Italy, specifically, about the operation of LJN Toys' Italian subsidiaries. Although LJN Toys undertook to run its subsidiaries until they performed their contractual duties, those duties were to be performed in Italy.

The Employment Agreement was entirely concerned with an employment relationship between two Italian parties, to be performed in Italy. The Umbrella Agreement also contemplated performance in Italy. Most of its provisions address the management of AL–ES and LJN Italy or transactions between them and the Fassis' companies. Four of the seven claims asserted here concern such wholly Italian transactions. Claim five, for repayment by LJN Toys of Zerga's 20% investment in LJN Italy, is also to be performed in Italy.

The provision sued upon in claim six, requiring LJN Toys' Hong Kong subsidiary to liquidate Superest and repay the investment of ALN, does require performance outside of Italy. Yet even this transaction between a Hong Kong subsidiary and an Italian subsidiary has greater ties to Italy than to New York. LJN Toys' duty to pay Zerga a share of certain American insurance proceeds is to be performed in Italy and adds little to the Umbrella Agreement's slight connections with the United States.

In sum, LJN Toys' major obligation under the Umbrella Agreement was to operate its Italian subsidiaries until they had performed their obligations to the Fassis. The underlying obligations of those subsidiaries, upon which most of the obligations of LJN Toys depend, were to be performed entirely in Italy and have no relation to New York.

### D. *Choice of Law*

Choice of law also favors Italy as a forum for this action. Under both *Gulf Oil*, 330 U.S. at 509, 67 S.Ct. at 843, and *Piper Aircraft*, 454 U.S. at 251, 102 S.Ct. at 263–64, the necessity of applying foreign law supports dismissal. The Employment Agreement expressly states that it is governed by Italian law. Thus, Italian law would govern the underlying claims to salary and benefits from LJN Italy and AL–ES that are the subject of the first two claims.

There is no choice of law provision in the Umbrella Agreement. Defendants argue that it too is governed by Italian law. Plaintiffs contend that it would be governed by New York law in an action in this court. Although the agreement was negotiated and executed in part in New York, Italy appears to have the most significant contacts with its performance.

### E. *The Italian Litigation*

Defendants contend that the Fassis are already litigating in Italy the claims they have brought here. Plaintiffs distinguish this action as based on the independent obligations of LJN Toys and MCA, as opposed to those of LJN Italy and AL–ES. Plaintiffs also rely on the fact that their Italian actions have been stayed as an argument for New York as an appropriate forum.

LJN Toys did assume independent obligations to plaintiffs. Yet three of plaintiffs' seven claims against LJN Toys in this action stem from the same underlying breaches by LJN Italy and AL–ES that plaintiffs have asserted in their two Italian actions. Claims one and two here, for salary and benefits owed by LJN Toys to plaintiff Johnny Fassi, seek the same relief from LJN Toys as Johnny Fassi sought from AL–ES and LJN Italy in the Labor

Court of Monza. Claim three here, for repayment of loans made to AL–ES, asserts substantially the same claim as the Fassi brothers asserted against AL–ES in the Court of Monza, in the action that has been transferred to the Bankruptcy Court of Milan. That similar actions are pending in Italy does not deprive this court of jurisdiction, but it does suggest that this action could proceed conveniently in Italy.

The fact that this action against LJN Toys, if brought in Italy, might be stayed by, or transferred to, the Milan Bankruptcy Court does not alter the inference that Italy is a convenient forum for this litigation. Plaintiffs' desire to avoid the effect of a possible bankruptcy stay in the courts of their own country is not a reason for this court to proceed on their claims. Indeed, if plaintiffs' claims against LJN Toys are so related to AL–ES bankruptcy proceedings that Italian courts would consolidate or stay them, that very relatedness suggests that Italy is the most appropriate forum for them.

### III. *Conclusion*

This action arises from breaches of contracts governing the relationship between Italian plaintiffs and defendants' Italian subsidiaries. Analysis of the factors enumerated in *Gulf Oil* favors dismissal on the ground of *forum non conveniens.* Accordingly, defendants' motion to dismiss is granted on the condition that defendants waive any personal jurisdiction or statute of limitations defenses in an action against them in Italy on these claims, and that they make their employees available to plaintiffs as witnesses for trial in Italy.

SO ORDERED.